UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MUHAMMED A.,

        **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

Case No. 2:20-cv-13944
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Muhammed A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On November 28, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since October 20, 2017. R. 67, 77, 147–48. The application was denied initially and upon reconsideration. R. 79–83, 89–91. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 92–93. Administrative Law Judge ("ALJ") Leonard Costa held a hearing on June 10, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 29–58. In a decision dated July 25, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 20, 2017, his alleged disability onset date, through the date of that decision. R. 15–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 7, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 6, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[2] On April 7, 2021, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 46 years old on his alleged disability onset date. R. 21. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 20, 2017, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post myocardial infarction time two; defibrillator implant; chronic ischemic heart disease; status post excision of cyst, and bursitis of the left shoulder. *Id.* The ALJ also found that Plaintiff's diagnosed diabetes mellitus, type 2, and hypertension were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 18–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a press operator. R. 21.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 10,302 jobs as an order clerk; approximately 12,849 jobs as a touch-up screener, printed circuit board assembler; and approximately 49.479 jobs as a document preparer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 20, 2017, his alleged disability onset date, through the date of

the decision. R. 23.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

**IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On April 2, 2019, Joseph Vitale, M.D., Plaintiff's treating physician, completed a six-page, fill-in-the-blank, check-the-box, medical source statement. R. 899–904. Dr. Vitale assessed Plaintiff's ability to do work-related activities on a regular and continuing basis (defined as "8 hours a day, for 5 days a week, or an equivalent work schedule") using the following terms: occasionally, which "means very little to one-third of the time"; frequently, which "means from one-third to two-thirds of the time"; and continuously, which "means more than two-thirds of the time." R. 899. Dr. Vitale opined that Plaintiff could never lift or carry any weight, *id*., could sit for one hour at a time for a total of eight hours in an eight-hour workday, could stand for ten minutes at a time for a total of 80 minutes in an eight-hour workday, and could walk for five minutes at a time for a total of 40 minutes in an eight-hour workday. R. 900. Plaintiff does not require the use of a cane to ambulate. *Id.* Dr. Vitale went on to opine that Plaintiff could occasionally reach (overhead and in all other directions), handle, finger, feel, and push/pull with his right (dominant) hand, but could never reach (overhead or in any other

direction), handle, finger, feel, or push/pull with his left hand. R. 901. Dr. Vitale noted that the defibrillator in Plaintiff's left side and the fact that a large tumor had been removed from Plaintiff's left shoulder supported these limitations. *Id*. Dr. Vitale further opined that Plaintiff could occasionally operate foot controls bilaterally and that Plaintiff's heart disease, including three heart attacks and one cardiac arrest, supported this limitation. *Id*. Dr. Vitale opined that Plaintiff could never climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl, as a result of Plaintiff's cardiac arrest. R. 902. Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations. R. 903. Plaintiff could tolerate quiet or moderate noise conditions (such as a library or office) but could not tolerate loud or very loud conditions (such as heavy traffic or a jackhammer). *Id*. Because of Plaintiff's prior heart attacks, Plaintiff could not perform such activities as shopping, travel without a companion for assistance, ambulating without using a wheelchair, walker, or two canes or two crutches, or walking a block at a reasonable pace on rough or uneven surfaces, or using standard public transportation; but Plaintiff could climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, and use paper/files. R. 904. According to Dr. Vitale, Plaintiff's limitations first presented on October 20, 2017, and would last for twelve consecutive months. *Id*.

## V.    DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate Dr. Vitale's opinions. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 13–24; *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–6. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch balance or crawl; never climb ladders, ropes or scaffolds; occasionally push/pull controls with the upper left extremity; *do no overhead reaching with the left extremity*; have no exposure to unprotected heights or hazardous machinery; can have no exposure to extremes in environmental conditions; can understand, remember and carry out simple instructions with only occasional changes to essential job functions and can to make simple work -related decisions; *can occasionally reach in all directions with the upper left non dominate extremity*.

R. 18 (emphasis added). As previously noted, the ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[3] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

---

[3] As previously noted, Plaintiff's claim was filed on November 28, 2017.

11

including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations also require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and to articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567,

12

2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In this case, the ALJ found that some portions of Dr. Vitale's opinion were not persuasive and that other portions were persuasive, reasoning as follows:

> In an April 2, 2019 medical source statement of ability to do work related activities, Dr. Vitale reported that the claimant had the abilities to lift and carry no weight, sit for eight hours, stand for 80 minutes and walk for 40 minutes in an eight-hour workday. He also reported that due to the defibrillator in his left chest, the claimant could never reach (in all directions), handle, finger, feel or push and/or pull with the left hand, but could occasionally do these things with the right hand. He noted that the clamant could occasionally use foot controls. He also noted that the claimant could never climb stairs, ramps, ladders, scaffolds, balance, stoop, kneel, crouch or crawl. The doctor also noted that the claimant should avoid unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants as well as extreme cold, extreme heat and vibrations. The doctor reported that the claimant would not be able to shop, travel without assistance, walk without using an assistive device, walk at reasonable pace, use public transportation, climb a few steps, but that he would be able to prepare a simple meal and perform personal hygiene (Exhibit 8F).
>
> *I do not find this opinion to be persuasive with regard to the postural limitations as the limitations are not supported by the overall record. The record does not support such extreme limitations*. The overall limitations are extreme when weighed against the medical evidence. Of note, February 2019 chest x-ray showed no evidence of active pulmonary disease. The claimant was noted to be stable from a cardiac standpoint (Exhibit 13F). While he was limited for a short time due to a left shoulder mass and left shoulder pain, he was noted to have pain of only three out of 10 and he reported some improvement with physical therapy (Exhibit 16F). I find his opinion with regard to sitting for eight hours to be persuasive as it is not inconsistent with expected heart impairment limitations.

R. 20–21 (emphasis added).

In challenging the ALJ's consideration in this regard, Plaintiff contends, *inter alia*, that the ALJ did not sufficiently explain why he found Dr. Vitale's postural limitations to be unsupported. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 16–17 (citations to the record omitted); *Plaintiff's Reply Brief*, ECF No. 18, pp. 3, 5–6. Plaintiff specifically argues that the ALJ simply concludes that such limitations "are not supported by the overall record" without

providing any analysis as to supportability or citing to any evidence, as is required by the new regulations, and that the ALJ does not refer to any of Dr. Vitale's own treatment notes. *Id*. Plaintiff also argues that the ALJ wholly failed to explain how Dr. Vitale's opinion regarding postural limitations is inconsistent with any record evidence. *Id*. In response, the Acting Commissioner does not specifically address Plaintiff's arguments regarding the ALJ's consideration of Dr. Vitale's opinion about postural limitations. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 8–9.

Plaintiff's arguments are well taken. As Plaintiff points out, the ALJ simply concluded that Dr. Vitale's opinion regarding postural limitations was not persuasive because such limitations "are not supported by the overall record. The record does not support such extreme limitations." R. 21. The ALJ provides no citation to the record—including to Dr. Vitale's own treatment notes—to support this conclusion. *Id*. Nor does the ALJ explain how he considered the required factors of supportability and consistency. *Id*.

"The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As this Court's summary of the evidence set forth above makes clear, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [his] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no

14

effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"); *Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180 EAW, 2022 WL 174337, at *5–6 (W.D.N.Y. Jan. 18, 2022) (stating that, under the new regulations, the ALJ "is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors" and that the ALJ in that case "did not explain anything—instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *Nicole L. v. Kijakazi*, No. 6:20-CV-01576, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022) ("But without some clear discussion of the supportability factor the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review.").

     Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Vitale's opinion is harmless. This is particularly so because the vocational expert testified that the jobs identified by him and adopted by the ALJ—*i.e.*, order clerk, touch-up screener (printed circuit board assembly), and document preparer—as well as other unskilled, sedentary jobs, would not be available to an individual who had no use of the non-dominant upper extremity. R. 57.

     Although not addressed by the parties, the Court further notes that the ALJ's RFC appears to be internally inconsistent: the ALJ found that Plaintiff can "do *no overhead reaching* with the left upper extremity" but nevertheless "can *occasionally reach in all directions* with the upper left non dominate [sic] extremity[,]" which would presumably including overhead

15

reaching. R. 18 (emphasis added). The Court also notes that the ALJ found persuasive Dr. Vitale's opinion that Plaintiff could sit for eight hours, but the ALJ did not address Dr. Vitale's opinion that Plaintiff can sit for only one hour at a time without interruption and the RFC provides no requirement of a sit/stand option. R. 18, 21, 900.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate. Moreover, this is true even if, upon further examination of Dr. Vitale's opinion and the RFC determination, the ALJ again finds that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: May 6, 2022                              *s/Norah McCann King*
                                                                         NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE